No. 19,146.

THE STATE OF KANSAS, *Appellee*, v. ROBERT T. POWERS, *Appellant*.

### SYLLABUS BY THE COURT.

1. ASSAULT WITH INTENT TO KILL—*Section 38 of Crimes Act—Punishment under that Section Proper.* In case of an assault made on purpose, of malice aforethought, with a deadly weapon, with intent to kill, as defined in section 38 of the crimes act (Gen. Stat. 1909, § 2526), the punishment prescribed in that section is authorized, although the assault is also willful, deliberate and premeditated.

2. SAME—*Denial of Instruction Relative to Section 42 of Crimes Act—Not Error.* In a prosecution under section 38, above referred to, it is not error to refuse an instruction embodying

section 42 (Gen. Stat. 1909, § 2530), where there is no evidence to sustain a verdict of guilty under the last-named section.

3. SAME—*Declaration of Person Assaulted—When Admissible.*
An objection to evidence of the declarations of the person injured in such an assault is examined, and no error is found in its admission in the situation shown.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed April 11, 1914. Affirmed.

*J. J. Baker,* of Troy, and *W. H. Haynes,* of St. Joseph, Mo., for the appellant.

*John S. Dawson,* attorney-general, *S. M. Brewster,* assistant attorney-general, and *C. W. Reeder,* county attorney, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a conviction for an assault with intent to kill.

The information is very formal and contains much not essential to a charge under section 38 of the crimes act, defining the offense of which the defendant was found guilty. It charges that he did—

"Then and there, unlawfully, willfully, deliberately, premeditatedly, feloniously on purpose and of his malice aforethought make an assault upon one William H. Dawe, with a revolving pistol or gun loaded with powder and ball, the same being a deadly weapon and then and there held in the hand of the said Robert T. Powers, with the intent then and there the said William H. Dawe to unlawfully, willfully, deliberately, premeditatedly, feloniously, on purpose and of his malice aforethought to kill and maim; and the said Robert T. Powers then and there being, did, then and there, with the said revolving pistol or gun loaded and held as aforesaid, the same being a deadly weapon, unlawfully, willfully, deliberately, premeditatedly, feloniously on purpose and of his malice aforethought shoot at, against. and into the head of the said William H. Dawe, with the intent, then and there, with said revolving pistol loaded and held as aforesaid, the same being a deadly

weapon, unlawfully, willfully, deliberately, premeditatedly, feloniously, on purpose and of his malice aforethought to kill and maim the said William H. Dawe."

This language is followed by a repetition, only adding a few words which more specifically charge wounding.

The evidence tended to prove that the defendant, while at the side of a road, shot at and severely wounded Dawe, who was driving his team along the road.

The jury were instructed concerning the ingredients of a felonious assault, as defined in section 38 before referred to, but an instruction upon the lesser offense of wounding, as defined in section 42 of the crimes act was refused. This refusal presents the principal question to be decided upon this appeal. The request contained a copy of section 42, to which was added:

"The defendant may therefore be convicted with assault with intent to kill, under Section 38, if the evidence is sufficient to justify a conviction, or he may be convicted, under Section 42, of wounding William Dawe in the manner charged in the information under circumstances which would have constituted murder or manslaughter if death had ensued from said wounding, if the evidence is sufficient for that purpose, but is insufficient to justify a conviction under Section 38."

The two sections to be considered are:

"SEC. 38. Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, . . . shall be punished by confinement and hard labor for a term not exceeding ten years."

"SEC. 42. If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procure-

ment or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by confinement and hard labor not exceeding five years, or in a county jail not less than six months." (Gen. Stat. 1909, §§ 2526, 2530.)

The defendant contends in his brief that section 38 provides for no punishment under this information and the evidence; that if the charge contained in the information that the assault was willful, deliberate, and premeditated, was true, it would have constituted murder in the first degree, if death had ensued; for which no punishment is provided otherwise than by section 42. Upon this hypothesis it is argued that there was error in refusing to instruct that a verdict might be found against the defendant under section 42.

It is obvious that one guilty of an assault with intent to kill, as defined in the section first mentioned, would have been guilty of murder, at least in the second degree, if death had ensued. That degree of murder is thus defined:

"Every murder which shall be committed purposely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree." (Crimes Act, § 7, Gen. Stat. 1909, § 2495.)

Where wounding, under circumstances which would have constituted murder if death had ensued, is done with the purpose and intent specified in section 38, it is punishable as provided in that section. Lacking that specific purpose and intent it is punishable as provided in section 42. These sections have been examined and construed. (*The State v. White,* 14 Kan. 538; *The State v. Miller,* 25 Kan. 699; *The State v. Child,* 42 Kan. 611, 22 Pac. 721.)

It is concluded that there was no error in refusing the instruction requested unless there was evidence to sustain a verdict under that section. It is therefore necessary to examine the testimony. The defendant

states in his abstract that the only direct evidence of the shooting was given by Dawe, and that:

"Dawe testified that he was driving by the home of the defendant and that the defendant without any provocation, came crouching from his house down to the hedge fence which runs along the public highway, and then and there shot the said William H. Dawe, with a revolver, striking him on the right cheek, the bullet passing through his face and lodging under the skin, just below and in front of the left ear."

Another witness testified:

"That her residence is on the opposite side of the road from that of Robert T. Powers, and a short distance to the west; that she was at the east window of her kitchen, when William Dawe was passing the home of Robert T. Powers, that she saw Powers come around the corner of his house, and run in a stooping posture to the hedge north of his house, that when he got to the hedge, she heard the report of a gun or pistol and saw the smoke rise over the hedge."

The abstract also recites:

"While there is a large amount of testimony in this case, the foregoing is all that the appellant deems necessary to call the attention of the court to."

Some other evidence was abstracted and will be referred to in considering another assignment of error.

If the jury believed the evidence abstracted in the above quotation, there was nothing to reduce the offense below the major charge; and there is no claim that there was, the contention being that if the charge contained in the information is true, the only punishment is that provided in section 42, and that none is provided in section 38.

The defendant complains of the admission of testimony. In addition to that referred to, it appears there was evidence that when the shot was fired Dawe's team broke into a gallop, ran an eighth of a mile into the premises of Mrs. Privett, when Dawe climbed out of the wagon and walked to the porch, where he fell, and

said that Powers had shot him.  Two witnesses testi-
fied to this declaration.  The testimony of one was:

"Q.  Where was Bill Dawe?  A.  He was laying on
the porch.

"Q.  What was his condition?  A.  He was wounded
in the head and bleeding.

"Q.  Did you hear him say anything as to how that
wound occurred?"  (Objected to as not part of the *res
gestæ*, and neither have they shown that the defendant
was present when the statement was made.)

By the Court: "How long would you say it was after
you had heard these shots fired that you heard Mr.
Dawe make some statement, from the time you were
sitting on the west porch and heard the shots fired?
A.  It was about two or three minutes I heard the shot
fired.

"Q.  You don't understand the question.  I am try-
ing to get the time between when you heard the shots
fired and when you got over there and heard this state-
ment?  A.  About fifteen or twenty minutes."

The other witness placed the interval of time at
about fifteen minutes.  In the circumstances the time
can not be exactly fixed.

Was this evidence of the declaration or exclamation
of Dawe admissible?  To be admissible as part of the
*res gestæ,* as that term is commonly used, it must have
been uttered so near in point of time to the act referred
to that the nervous excitement may still be supposed to
dominate, and the reflective powers to be in abeyance.
(3 Wigmore on Evidence, § 1750.)  "What the law
altogether distrusts is not after-speech but after-
thought.  .  .  .  That they [the declarations] shall
be, or appear to be, spontaneous is indispensable, and it
is for this reason alone that they are required to be
speedy."  (*Travelers Ins. Co. v. Sheppard,* 85 Ga. 751,
775, 776.)  Similar statements of the rule may be
found in the reports of many cases, but, as Professor
Wigmore observes, the application of the principle de-
pends upon the circumstances of each case.  The sub-
ject was recently considered at some length in *Camp-*

15—92 KAN.

*bell v. Brown,* 81 Kan. 480, 106 Pac. 37, and briefly in *The State v. Alexander,* 89 Kan. 422, 131 Pac. 139. In the earlier case of *The State v. Morrison,* 64 Kan. 669, 68 Pac. 48, the declaration admitted was made three to five minutes after the encounter to which it related. While time is highly important, the entire situation must be kept in view. Here the sudden attack, the running team, the fall at the porch from the effects of the bleeding wound, the natural distress of body and mind, and all the concomitants of the tragedy, must be considered in determining whether the declaration was spontaneous. The fact that evidence of statements made an hour afterwards to the doctor were excluded evinces careful discrimination, and in the light of all the circumstances, it can not be held that the discretion of the presiding judge in admitting evidence of the declaration was improperly exercised. A quotation in the opinion in the Morrison case is so pertinent as to justify repetition here:

"If declarations of a past occurrence are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the *res gestæ.* (21 A. & E. Encycl. of L. 101.)" (p. 680.)

The injured man testified at the trial, giving his version of the shooting, which seems to have been undisputed, and it may well be doubted whether the admission of his declaration that Powers shot him was prejudicial, even if erroneous.

The judgment is affirmed.