THE STATE OF KANSAS, *Appellee*, v. BERT TAWNEY, *Appellant*.

No. 16,460.

SYLLABUS BY THE COURT.

1. CHANGE OF VENUE—*Prejudice of the Judge.* A court is not compelled to grant a change of venue upon the affidavit of the defendant alleging prejudice of the judge, although no counter affidavit or proof is filed, where the judge is satisfied that his mind is free from prejudice and that the statements in the defendant's affidavit are without foundation.

2. ———— *Same.* The fact that the court in approving a verdict and pronouncing sentence at a former trial of the defendant upon the same charge expressed an opinion of the defendant's guilt does not of itself indicate prejudice.

3. PRACTICE, DISTRICT COURT—*Expression of Opinion—Influencing the Jury.* Ordinarily an expression of opinion by the court upon an issue of fact has great weight with jurors, and he should therefore carefully abstain from indicating his opinion upon a material question of fact which it is the province of the jury to determine.

4. CRIMINAL LAW—*Cross-examination of Witnesses by the Defendant.* It is competent for a defendant to bring out on-

cross-examination of a witness against him any fact or circumstance tending to show that his testimony may have been influenced or colored by intimidation or by some selfish or personal motive, and thus aid the jury in measuring the value of the testimony.

5. ———— *Same.* It was competent for the defendant to bring out, or show, that the principal witness for the prosecution, who it was claimed was also involved in the offense charged, when called upon to testify at the preliminary examination of the defendant, refused to give his testimony; that he was then committed to the county jail for several hours until he became willing to testify; and that then he was brought in and gave testimony exculpating himself and supporting the charge against the defendant. And the defendant is also entitled to bring out any circumstances which tend to show that the testimony of the witness was obtained by coercion or interest in the result of the trial, or which might affect his credibility.

6. INSTRUCTIONS—*Emphasizing Isolated Facts.* It is not proper for a court in instructing a jury to call special attention to an isolated fact, and by making it prominent suggest to the jury that it is of greater significance and weight than other unmentioned facts in the case which are of no less importance.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed November 6, 1909. Reversed.

*W. J. Costigan,* and *Ralph E. Page,* for the appellant.

*Fred S. Jackson,* attorney-general, and *W. B. Pleasant,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from the second conviction of Bert Tawney for the larceny of two pigs. The first error assigned is based on the action of the court in denying an application for a change of venue. In his affidavit the appellant alleged that the district judge was prejudiced against him, and that it was evidenced by the manner, tone of voice and prejudicial

comments of the judge in the former trial. Upon an objection to the reading of the affidavit the district judge said:

"I don't care to hear the affidavit. Motions for a change of venue on the ground of prejudice of the court have become so much a matter of course in certain cases that we naturally look for them. In this motion the defendant swears that the court is prejudiced against him. That is absolutely false, and I believe he knew it was false when he swore to it. He also swears that the court has expressed the opinion that he is guilty of the crime charged against him. That is absolutely true. I did think so, and I told him so when I sentenced him. If I had not thought so I would not have sentenced him."

The personal knowledge of the judge as to the state of his own mind is not to be ignored, and he is not compelled to grant a change of venue upon the affidavit of a defendant, although there is no counter affidavit, especially where he is conscious that he is free from prejudice and believes that the statements in the defendant's affidavit are without foundation. (*City of Emporia v. Volmer*, 12 Kan. 622; *The State v. Bohan*, 19 Kan. 28; *The State v. Grinstead*, 62 Kan. 593; *The State v. Parmenter*, 70 Kan. 513.) The fact that when the sentence of the law was pronounced upon the appellant at the former trial the court expressed the opinion that he was guilty does not of itself indicate prejudice. The jury were of the same opinion. Complaint is made, however, that the statements of the court in denying the motion must have reached the ears of the jurors and resulted in prejudice to the appellant. The strong language employed by the court, which in effect imputed perjury to the appellant, if used in the presence of jurors, may have been harmful to him. While the ruling was made just before the impaneling of the jury, it does not appear that any part of the panel was present at the time the statement was made nor that the remark was brought to the attention of any juror who tried the case.

There is complaint of the ruling on the admission of the testimony of Beecher Day, who was a witness in behalf of the state in the former trial but who was declared insane and had died before the second trial. The objection to the testimony was on the ground that Day was insane when his testimony was given and that to falsify was one of his peculiar infirmities. Counsel for the appellant proposed to make a showing to this effect, but the objection was overruled, the court remarking: "I saw the witness at the former trial, and I heard him testify, and I saw no signs of insanity about him." Afterward the defense was permitted to introduce the insanity proceedings, which had been had in September, 1908, and in which it was found that Day was insane; that his disease was of two years' duration, and that he was subject to epilepsy and manifested suicidal tendencies. The testimony in question was given by Day in September, 1907. Since the main facts involved in the offer were subsequently received in evidence at the instance of the appellant, there is little reason to complain of the earlier ruling. There is some ground, however, for complaint of the remark of the trial judge, in the presence of the jury, that he had observed the witness when he testified and "saw no signs of insanity about him." Ordinarily an expression of opinion by the judge upon an issue of fact has great weight with jurors, and he should not indicate his opinion upon a fact which it is the province of the jury to determine. It is not easy to say that this one had no influence with the jury.

Error is assigned on rulings made on the cross-examination of Joe Lockwood, the principal witness against the appellant. The stolen pigs were found in the possession of Lockwood, and there was testimony by Cynthia Tawney, his sister, that these pigs, which belonged to Mathias, were trespassing on the Tawney farm; that she caught two of them and took them over to Lockwood's place, telling him that they belonged to

Mathias; that she left them with him and later traded them to him for a small sow. She also testified that she did not inform her husband, the appellant, of what she had done until Mathias found his pigs in Lockwood's place, which was shortly before her husband's arrest. The appellant proposed to prove that at the preliminary examination Lockwood was called as a witness for the prosecution and refused to testify; that he was then committed to the county jail for several hours, and afterward was brought in and gave testimony exculpating himself and putting the theft of the pigs upon the appellant, but upon objection the testimony was excluded, the court saying that "unless he was put in there for some crime it is wholly immaterial." Counsel for the appellant suggested that he wanted to show that this witness, who had possession of the stolen pigs and might be concerned in the theft, was intimidated by being placed in jail for refusing to testify, and that his coming in and giving the testimony desired when released from custody had a tendency to show duress. In response the court said: "Oh, there is no evidence at all of any duress." Counsel persisted in the claim that the evidence was admissible, and the court remarked that "if he [Lockwood] was a competent witness, and refused to testify, the justice had a right to compel him." To this counsel replied that "no man can be compelled to testify so as to incriminate himself." The court then responded: "That is the privilege of the man on trial, not of a mere witness who was competent to testify. I say again, if he was sent to jail for some crime, you might show that, but I think this is not proper here; it is immaterial."

The testimony should have been received, and that without being minimized or discredited by the remarks of the court. The appellant was entitled to any evidence affecting the credibility of Lockwood and the force to be given to his testimony. He was the principal witness against the appellant, and according to some of

the testimony was himself involved in the larceny of the pigs. He was interested in clearing himself of complicity in the theft. If when first called upon to testify to what he knew of the transactions he refused to answer questions, and if he was induced to testify against the appellant in order to escape prison or to protect himself, or if there was any intimidation or peculiar inducement for him to testify as he did, or if he had any special interest in the result of the prosecution, it was proper to bring it out on cross-examination. It was competent for the appellant to show any circumstance which might tend to prove that the testimony given against him may have been influenced or colored by some selfish or personal motive, and in that way aid the jury in measuring the value of the testimony. It was the privilege of the witness to refuse to give testimony which would expose him to a criminal charge or to any kind of punishment. This privilege is not confined to the one on trial, as was suggested, but is available to any witness called to testify in the case. The materiality of the ruling excluding this evidence was enhanced by an instruction of the court singling out the testimony of Lockwood to the effect that the appellant had offered him money to "hike out" and remain away for two years, until the trouble would "blow over." The instruction was:

"If you believe from the evidence that the defendant attempted to corrupt witnesses for the state, or offered to pay witnesses for the state to absent themselves and thus deprive the state of their testimony, you have a right and it is your duty to take such matters into consideration in determining the guilt or innocence of the defendant."

The testimony on the subject had been submitted to the jury, and it does not appear that there was any danger of its being overlooked by them, nor is any reason seen why it was necessary to place special emphasis upon this single circumstance. It is a dangerous practice to call special attention to an isolated fact, and

thus by making it prominent lead the jury to the opin-
ion that it is of greater significance and weight than
other unmentioned facts in the case which may be of no
less importance.    (12 Cyc. 649.)    Under the circum-
stances it would seem that undue prominence was given
to this phase of the case, and, as stated, it made more
material the error of the court in limiting the inquiry
as to the motives and credibility of the witness who
gave the emphasized testimony.

There are some other objections, but as they may not
arise in another trial of the cause it is not deemed
necessary to consider them.    The judgment of the dis-
trict court is reversed and the cause remanded for a
new trial.

BENSON, J., not sitting.